I agree that, from all that appears in the record before us, Judge Macon had jurisdiction over Annie Manning's Rule 60(b), Ala.R.Civ.P., petition. I also agree that, therefore, Judge Bush, although attempting to adjust the equities between the parties, erred in setting aside Judge Macon's order and judgment, which awarded the property to Mrs. Manning subject to any interest the Wingos might hold as bona fide purchasers for value.
The August 1983 settlement agreement approved by Judge Macon contemplated that Clinton Manning would deed certain properties to Annie Manning in exchange for her deeding other property to him. The one-acre tract at issue here was not included in that settlement agreement, but the transcript of the hearing at that time includes the following statement by Annie's attorney: "[T]here is one acre, 210 by 210, that is referred to that's excluded from this property already by reason of a mortgage foreclosure by a mortgagee. . . . Hopefully [Milton Manning, the minor son,] might still have an opportunity to redeem it." The action we now have on review was filed on March 7, 1985, partially on the theory that, during proceedings pursuant to the settlement agreement, Annie discovered that Clinton had fraudulently misrepresented that the one-acre parcel had been foreclosed upon but that, in fact, he had purported to convey it to the Wingos.
The record before us indicates that, before Clinton executed any deed pursuant to the settlement agreement, he became incompetent, and that he died in the spring of 1984. Although the motion for relief under Rule 60(b) is not before us, the Wingos assert that it was filed on February 26, 1986. On March 12, 1986, Judge Macon relieved Annie from any duty under the August 1983 settlement to convey property to Clinton Manning and ordered that, as her son Milton Manning was the only heir of both his father Robert Manning and his uncle Clinton Manning, all property that was to have been disposed of in the settlement agreement would be conveyed by a clerk's deed to Annie and Milton Manning. The one acre tract at issue here, and an adjoining 4.4-acre tract that Clinton and Hobson Nelson had similarly purported to convey to the Wingos, were ordered to be conveyed
 "subject to the rights, if any, that Oscar L. Wingo and Myrtis M. Wingo or their assigns may establish as bona fide holders for value as grantees of a certain recorded deed . . . executed by Hobson Nelson as Executor of the Robert Maddox Manning Estate."
In all these respects, Judge Macon acted properly in granting relief under Rule 60(b)(5).
In her original petition for declaratory relief and sale for division, Annie had asserted that she owned a one-half interest in the subject property by virtue of a 1962 deed to her and Robert Manning and by virtue of a reservation in her divorce judgment as to the title to the real property. She asked the court to declare whether the estate of Robert Manning or the Wingos owned the other one-half interest. On November 6, 1986, she filed an amendment to her petition, asserting that the Wingos were not bona fide purchasers for value *Page 871 
and so held no interest in the property, and that the one-half interest owned by the Robert Manning estate had been conveyed to her and Milton pursuant to Judge Macon's March 12, 1986, order. She added a claim for damages for the rental value of the Wingos' use of the property. In addition to defending against her claims, the Wingos counterclaimed for the value of their improvements.
On February 23, 1990, Judge Bush entered an order in this action that included the following:
 "This is an action in equity. As such, the court's mission is to attempt to do what is right between the parties. In response to equitable principles this Court finds and Orders as follows:
 "1. That Oscar L. and Myrtis Wingo, when they purchased the subject property from the estate from Robert Maddox Manning, were bona fide purchasers for value and therefore have owned a one-half undivided interest in the whole of the following property since they purchased it in May of 1981. [Describing the one-acre parcel at issue.]
 "2. That the Circuit Court of Autauga County's 60(b) Judgment In the Matter of the Estate of Robert Maddox Manning, Case No. CV 82-157 dated March 12, 1986, is hereby set aside to the extent that it affects this subject piece of property. This Court finds that the 60(b) motion was not filed in a timely manner and therefore it well appears that the Circuit Court was without jurisdiction to rule on the same. Further, this order substantially affected the rights of the Wingos and since they were known to have a potential interest in the subject property by the plaintiff at the time that the Motion was filed, they should have been notified and should have been added as parties to that proceeding."
I have shown above why I agree with the majority opinion that Judge Bush erred in holding that Judge Macon did not have jurisdiction to rule on the Rule 60(b) motion. I also believe that Judge Bush erred in holding that the Wingos were bona fide holders for value.
 "A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party. . . . Notice sufficient to preclude a bona fide purchase may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party. . . .
". . . .
 "A purchaser is chargeable with notice of what appears on the face of the instruments in his or her chain of title."
Rolling "R" Construction, Inc. v. Dodd, 477 So.2d 330, 331-32
(Ala. 1985) (citations omitted).
At the time of the deed to the Wingos, the chain of title to this parcel reflected that Robert and Annie Manning were co-owners of the property by a 1962 deed. There was no instrument divesting Annie Manning of her interest. Furthermore, there was no instrument in the chain of title reflecting that Robert Manning's estate had been probated, that Hobson Nelson had been named executor or administrator, or that Clinton Manning had been declared the beneficiary of the estate or devisee under a will. There was evidence that Mr. Wingo attended the 1983 hearing on the settlement agreement at which the property he had purchased was referred to as having been foreclosed upon. He admitted having transported Clinton Manning to a hearing on the will contest, although he said he did not remember the date and did not learn anything about the contest. Because the Wingos had record notice of title contrary to that asserted by their grantor, they could not be bona fide purchasers for value.
The majority opinion proceeds to observe that the Wingos are not in a posture in which parties have traditionally been allowed compensation for the value of improvements, but nevertheless holds that they are entitled to such relief "based on the circumstances of this case and balancing the equities involved under these facts." Perhaps this is based on the idea *Page 872 
that Mrs. Manning unreasonably delayed any attempt to redeem the property under her misunderstanding (apparently caused by Clinton's fraud) that the mortgage had been foreclosed. I can see no other basis for holding that, although the Wingos purchased with notice that their grantor did not hold or have authority to convey title and that Mrs. Manning owned an interest, they have an equitable claim. I would hold that the Wingos purchased the property and made improvements to it at their own risk.
Even if I agreed with the majority that the Wingos should be entitled to some relief, I would not hold that the Wingos can obtain the property by payment of the value of the lands less the value of the improvements. Furthermore, under the majority's result, an award of the value of the improvements should be offset by the reasonable rental value of the property during the time the Wingos have held it.